UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MICHAEL YURASOV-LICHTENBERG,

                Plaintiff,                        **MEMORANDUM AND ORDER**
                                                      15-CV-1430 (RRM) (MDG)

                -against-

MILICA BETZ, M.D.; HENRY BIGGS, M.D.;
NAPLES COMMUNITY HOSPITAL
HEALTHCARE SYSTEM; JANE DOE, a nurse
at the downtown Naples Hospital,

                Defendants.
----------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

        Plaintiff Michael Yurasov-Lichtenberg, proceeding *pro se*, brings this action alleging that

defendants' medical negligence caused him to suffer a pulmonary embolism, which resulted in

short-term and long-term physical and emotional damage.  (Compl. (Doc. No. 1).)  Defendants

Milica Betz, M.D. ("Betz"), Naples Community Hospital Healthcare System ("NCH

Healthcare"), and Henry Biggs, M.D. ("Biggs") each move separately to dismiss this action for

lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2).[1]

(Betz Mot. to Dismiss (Doc. No. 19); NCH Healthcare Mot. to Dismiss (Doc. No. 24); Biggs

Mot. to Dismiss (Doc. No. 34).)  Yurasov-Lichtenberg opposes these motions in a single

---

[1] Contrary to Yurasov-Lichtenberg's contention, Defendants have not waived their right to object to personal jurisdiction.  Before filing their answers, defendants promptly and properly filed letters with the Court, each requesting a pre-motion conference regarding a Rule 12(b)(2) motion and requesting an extension of time to answer. (Biggs 7/22/15 Letter Mot. (Doc. No. 7); NCH Healthcare 7/28/15 Letter Mot. (Doc. No. 9); Betz 8/5/15 Letter Mot. (Doc No. 10.).)  *See* Rule III.A.2–3, Individual Rules of Judge Roslynn R. Mauskopf, *available at* https://www.nyed.uscourts.gov/pub/rules/RRM-MLR.pdf (stating that a defendant who wishes to file a dispositive motion must submit a letter requesting a pre-motion conference and, if needed, an extension of time to answer); *see also* Rule 12(a)(4) (stating that once a motion has been filed pursuant to Rule 12, a defendant need not file a responsive pleading until after the court has ruled on the motion); *Pacnav S.A. v. Effie Bus. Corp.*, No. 06-CV-13512 (JGK), 2010 WL 2102714, at *2 (S.D.N.Y. May 20, 2010) (stating that an objection to jurisdiction may be raised any time before an answer is filed or in the answer.); *Luv N' Care, Ltd. v. Babelito, S.A.*, 306 F. Supp. 2d 468, 472–73 (S.D.N.Y. 2004) (finding that Rule 12(b) motions need only "be raised in a reasonably timely fashion").

response.[2]  For the reasons set forth below, the Court determines that it lacks personal

jurisdiction over defendants and transfers the case to the United States District Court, Middle

District of Florida.

## BACKGROUND

Yurasov-Lichtenberg resides in Staten Island, New York.  (Compl. at 1.)  On March 14,

2013, in Collier County, Florida, Yurasov-Lichtenberg suffered a hip fracture and was brought to

NCH Healthcare's Downtown Naples Hospital in Collier County, Florida ("Hospital"), where he

was admitted for treatment.  (*Id.* at 2.)  On March 15, 2013, Biggs, a doctor at the Hospital,

performed surgery on Yurasov-Lichtenberg.  (*Id.*)  From March 15 to 18, 2013, Betz, another

doctor at the Hospital, provided and directed medical care for Yurasov-Lichtenberg before

discharging him on March 18, 2013.  (*Id.*)

The morning of his discharge, Yurasov-Lichtenberg noticed that his left leg looked

unusual.  (*Id.*)  It was more swollen than it had been the previous day and was mottled with

purple.  (*Id.*)  Worried about this change and still in the care of NCH Healthcare, Yurasov-

Lichtenberg repeatedly asked to be seen by Betz, Biggs, or another physician at the Hospital.

(*Id.*)  No physician subsequently examined Yurasov-Lichtenberg and Yurasov-Lichtenberg was

eventually discharged from the hospital at around 4 p.m. on March 18, 2013 with a prescribed

outpatient treatment plan.  (*Id.*)

Yurasov-Lichtenberg alleges that he was suffering from deep vein thrombosis, which

Betz failed to diagnose and properly treat.  (*Id.*)  He further asserts that, as a result of this

---

[2] Yurasov-Lichtenberg submitted three identical opposition submissions in response to each motion to dismiss. (Pl.'s Opp'n to Def. Betz (Doc. No. 22); Pl.'s Opp'n to Def. NCH Healthcare (Doc. No. 29); Pl.'s Opp'n to Def. Biggs (Doc. No. 35), collectively "Pl.'s Opp'n").  However, due to the filing format, the ECF pagination is not the same for each submission.  All future references to Yurasov-Lichtenberg's opposition papers will reference those filed in connection with defendant Betz's motion – document number 22 on the docket.

negligence, he suffered a pulmonary embolism on or about March 26, 2013, while still in

Florida. (*Id.*)  He was treated for this condition at Wellington Regional Medical Center in West

Palm Beach, Florida. (*Id.* at 3.)  According to Yurasov-Lichtenberg, he suffered extreme pain

and emotional distress for several days after the pulmonary embolism and continued to suffer

physical and psychological debilitation up until the date of the complaint. (*Id.*)  He further

contends that this pain resulted in a reduction of his life expectancy and quality of life and that

the pulmonary embolism is likely to recur within a few years. (*Id.*)

On March 18, 2015, Yurasov-Lichtenberg filed the instant complaint against Betz, Biggs,

NCH Healthcare, and Jane Doe, an unidentified nurse at the hospital, alleging negligence and

requesting monetary damages. (*Id.* at 1, 3.)  Betz and Biggs are both residents of Collier County,

Florida, and NCH Healthcare's principal place of business is in Collier County, Florida. (*Id.* at

1.)  Betz, Biggs, and NCH Healthcare filed motions to dismiss for lack of personal jurisdiction

pursuant to Rule 12(b)(2). (Betz Mot. to Dismiss; NCH Healthcare Mot. to Dismiss; Biggs Mot.

to Dismiss.)  Yurasov-Lichtenberg opposes the motions, arguing that the Court possesses

personal jurisdiction over defendants under N.Y. C.P.L.R. § 302(a)(1) & (a)(3). (Pl.'s Opp'n at

1.)  In the alternative, Yurasov-Lichtenberg asks that the Court transfer the case to a court that

has jurisdiction over defendants. (Pl.'s Opp'n at 2.)

## STANDARD OF REVIEW

"[P]ersonal jurisdiction in a diversity case is determined by the law of the state in which

the district court sits." *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d

117, 120 (2d Cir. 1984).  Plaintiff bears the burden of demonstrating that the Court may exercise

personal jurisdiction over defendants. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d

Cir. 2001).  "In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district

court has considerable procedural leeway.  It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 170 (E.D.N.Y. 2015) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013)).  Where, as here, the issue of personal jurisdiction "is decided initially on the pleadings and without discovery, the plaintiff need show only a *prima facie* case" of jurisdiction on a motion under Rule 12(b)(2).  *Volkswagenwerk Aktiengesellschaft*, 751 F.2d at 120; *accord Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010).  In considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to plaintiff, the non-moving party, and all doubts are to be resolved in plaintiff's favor. *See DiStefano*, 286 F.3d at 84.

The Court is also mindful that Yurasov-Lichtenberg is proceeding *pro se*.  As such, his complaint is held to a less exacting standard than a complaint drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (citation omitted).  Because *pro se* litigants "are entitled to a liberal construction of their pleadings," the Court reads Yurasov-Lichtenberg's complaint to "raise the strongest arguments that [it] suggest[s]." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).  Nonetheless, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Molina v. New York,* 956 F. Supp. 257, 259 (E.D.N.Y. 1995).

## DISCUSSION

Yurasov-Lichtenberg asserts that the Court has personal jurisdiction over defendants pursuant to N.Y. C.P.L.R. § 302(a)(1) & (a)(3). (Pl.'s Opp'n at 1.)  The Court applies a two-part

4

test to evaluate personal jurisdiction.  *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425

F.3d 158, 165 (2d Cir. 2005).  First, the Court must determine whether, under New York law,

there is a statutory basis for exercising personal jurisdiction over defendants.  *See id.*  Second, if

there is a statutory basis for personal jurisdiction, the Court "must determine whether an exercise

of jurisdiction under these laws is consistent with federal due process requirements."  *Id.*

(quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.

1999)).[3]

## I.   Defendants Ties to New York

In connection with their motions to dismiss for lack of personal jurisdiction, each

defendant submitted an affidavit describing their contacts, or lack thereof, with New York.

### a.   *Defendant NCH Healthcare*

Kevin Cooper, the Chief of Staff and General Counsel at NCH Healthcare System, Inc.

submitted an affidavit on behalf of defendant NCH Healthcare.  (NCH Healthcare Aff. (Doc. No.

26) at 1.)  Cooper asserts that NCH Healthcare is a hospital licensed and incorporated in Florida

with its principal place of business also located in that state.  (*Id.* at 1.)  NCH Healthcare does not

do business in New York, has no agents, employees, or offices in New York, and does not

transact any business within or contract to supply goods or render services in New York.  (*Id.* at

2.)  Further, NCH Healthcare does not solicit business in New York; engage in any conduct in

New York; derive revenue from goods used or consumed, or services rendered, in New York;

own any business interests in New York; or possess any real property situated in New York.  (*Id.*

at 2.)

---

[3] Because, as discussed below, the relevant New York statutes provide no basis for jurisdiction over defendants, the
Court need not determine whether the exercise of jurisdiction over defendants complies with due process
requirements.  *See, Daimler AG v. Bauman*, 134 S. Ct. 746 (2014); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619
(2d Cir. 2016).

Yurasov-Lichtenberg  claims that, to the best of his knowledge, NCH Healthcare received

a payment from the New York Sate Medicaid program for services rendered in connection with

Yurasov-Lichtenberg's treatment.  (Decl. in Supp. Pl.'s Opp'n (Doc. No. 22-1) at 11.)  He

further argues that "[c]onsidering the position of NCH Healthcare as a prominent hospital in

Naples, Florida, a popular destination of tourism and seasonal migrations of the retirees, it is

highly unlikely that NCH Healthcare does not have contracts with New York insurers, derives no

revenue from New York sources, and derives no revenue from interstate or international

commerce."  (*Id.* at 12.)  He states upon information and belief that NCH Healthcare has long-

term agreements with numerous health insurance companies, many of which are New York

companies, either incorporated or registered in New York.  (*Id.* at 15.)  These insurers, Yurasov-

Lichtenberg alleges, actively solicit business in New York and provide the insured with referrals,

"effectively steering patients to Defendant."  (*Id.*)

b.  *Defendant Betz*

Defendant Betz asserts that she resides in and holds a license to practice medicine in the

State of Florida.  (Betz Aff. (Doc. No. 20-3) at 1.)  She does not hold a license to practice

medicine in New York and has never practiced medicine in New York.  (*Id.* at 2.)  Thus, Betz

has never rendered any services in New York from which she could derive revenue.  (*Id.*)

Further, Betz does not have any contracts or agreements with any healthcare providers to provide

medical services in New York, nor does she solicit business in New York.  (*Id.*)  She rendered

medical care to Yurasov-Lichtenberg in Florida, and all of her care and treatment of him took

place in Florida.  (*Id.* at 2.)  Betz possesses no real estate in New York, does not have an office in

New York, does not owe or pay taxes in New York, has no mailing address or phone number in

New York, does not have a New York motor vehicle license, and is not registered to vote in New

York.  (*Id.*)

Yurasov-Lichtenberg responds that "Dr. Betz does not disclaim receiving revenue from

New York sources and/or from the interstate commerce" and "[i]t is also highly unlikely that she

does not have any agreements with New York health insurers."  (Decl. in Supp. Pl.'s Opp'n at

12.)  Yurasov-Lichtenberg applies to Betz the same arguments regarding long-term agreements

with health insurance companies as set forth above with respect to NCH Healthcare.  (*Id.* at 16.)

He further asserts that "to the best of [his] knowledge, in 2013, Defendant Betz received a

payment from the New York State Medicaid program for services rendered to" Yurasov-

Lichtenberg.  (*Id.*)  Finally, Yurasov-Lichtenberg alleges that he received an invoice for Betz's

services from the Inpatient Consultants of Florida, with an address in California, which he

contends evidences Betz's involvement in and derivation of revenue from interstate commerce.

(*Id.* at 12–13.)

c.  *Defendant Biggs*

Defendant Biggs states that he is a resident of Florida and has never maintained a medical

license or engaged in the practice of medicine in New York, nor has he ever been affiliated with

any medical practices or hospitals in New York.  (Biggs Aff. (Doc. No. 34-4) at 2–3.)  He

maintains that he treated Yurasov-Lichtenberg exclusively in Florida.  (*Id.* at 2.)  He owns no

real property and maintains no businesses in New York.  (*Id.* at 1.)

Yurasov-Lichtenberg responds that "Dr. Biggs does not disclaim receiving revenue from

New York sources and/or from the interstate commerce" and that "[i]t is also highly unlikely that

he, or his clinic, does not have any agreements with New York health insurers."  (Decl. in Supp.

Pl.'s Opp'n at 13.)  He asserts that Biggs is an orthopedic surgeon in private practice in one of

the busiest hubs of tourism where his services are predominantly needed by elderly patients who

flock to Florida for the winter.  (*Id.*)  Yurasov-Lichtenberg also applies to Biggs the same

arguments regarding long-term agreements with health insurance companies as set forth above

with respect to NCH Healthcare.  (*Id.* at 16.)  He further asserts that to the best of his knowledge,

"in 2013, Defendant Biggs received a payment from the New York State Medicaid program for

services rendered to" Yurasov-Lichtenberg.  (*Id.* at 13.)

## II.     Personal Jurisdiction Pursuant to N.Y. C.P.L.R. § 302(a)(1)

Yurasov-Lichtenberg first claims that the Court has jurisdiction over defendants pursuant

to section 302(a)(1).

"Under C.P.L.R. § 302(a)(1), a court in New York may exercise personal jurisdiction

over a non-domiciliary party if (1) he transacts any business within the state and (2) the cause of

action aris[es] from' the business contacts." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F.

Supp. 2d 458, 465 (S.D.N.Y. 2008) (internal citation and quotation marks omitted).  The

"transacting business" prong is met if a defendant has "purposefully availed itself of the privilege

of conducting business in New York, thereby invoking the benefits and protections of its

laws. . . ." *Wickers Sportswear, Inc. v. Gentry Mills*, Inc., 411 F. Supp. 2d 202, 208 (E.D.N.Y.

2006).  The "arising out of" prong is met if "a substantial relationship" or "articulable nexus"

exists between the transaction of business within the state and plaintiff's claim.  *Sunward Elecs.,*

*Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004).  A defendant is not subject to the personal

jurisdiction of a New York court based solely on his or her "sheer volume of contacts" with New

York.  *Paterno v. Laser Spine Inst.*, 23 N.E.3d 988, 994 (2014).  "[I]t is not the quantity but the

quality of the contacts that matters under [New York's] long-arm jurisdiction analysis." *Id.*

Here, defendants' contacts with New York are insufficient to demonstrate that they

transact business in New York.  Yurasov-Lichtenberg's contends that defendants transact

8

business in New York by virtue of their relationships with New York insurance companies.  (*See*

Decl. in Supp. Pl.'s Opp'n at 13–17.)  He asserts that defendants are engaged in long-term

agreements with numerous insurance companies, many of which are either registered or

incorporated in New York.  (*See id.* at 15–17.)  These insurance companies actively solicit

business in New York and sell millions of dollars' worth of insurance to New Yorkers.  (*See id.*

at 15.)  Yurasov-Lichtenberg also claims that defendants received a payment from the New York

State Medicaid program for services rendered to him.  (*See id.* at 11–13.)  However, it is

uncontested that defendants have no offices in New York and conduct their medical practice

solely in the State of Florida.  (Betz Aff.; NCH Healthcare Aff.; Biggs Aff.)  Accordingly, the

only alleged connection between defendants and New York is their participation in New York-

based health insurance plans and their treatment of New York patients.  (*See* Decl. in Supp. Pl.'s

Opp'n at 13–17.)  These contacts are insufficient to subject defendants to this Court's

jurisdiction.

Applying the section 302(a)(1) analysis to another medical malpractice case involving a

New York plaintiff, this Court held that medical providers do not transact business within New

York "merely on the basis of participation in a New York-based health insurance plan."  *Hylton*

*v. New York Methodist Hosp.*, 708 F. Supp . 2d 248, 252 (E.D.N.Y. 2009).[4]  New York courts

---

[4] One Third Department decision found that an out-of-state physician who contracted with a New York-based health maintenance organization, CHP, to provide medical treatment to the CHP subscribers, who were mainly New York residents, was subject to personal jurisdiction in New York. *McLenithan v. Bennington Comm. Health Plan*, 635 N.Y.S.2d 812, 813–14 (3d Dep't 1996) ("[T]he CHP contract . . . required him to provide medical services to CHP subscribers . . . . [B]y actively seeking New York residents as patients, he should have reasonably expected that he would be required to defend his actions here.").  However, as this Court previously found, *McLenithan* has been cast into serious doubt by a subsequent New York Court of Appeals case. *See Hylton*, 708 F. Supp. 2d at 251 (discussing *Ingraham v. Carroll*, 90 N.Y.2d 592 (1997) and *McLenithan*, and finding that "if [defendants] actually did bill a New York-based insurer in connection with [plaintiffs] treatment, long-arm jurisdiction remains inappropriate").  To find personal jurisdiction here, where a medical provider contracts with out of state insurers, "would set a precedent for almost limitless jurisdiction over out-of-state medical providers in future cases" – a breadth of application the New York Court of Appeals has rejected. *Paterno*, 23 N.E.3d at 995 ("[T]o find defendants' conduct here constitutes transacting business within the meaning of CPLR 302(a)(1) . . . would set a precedent for almost limitless

have also declined to exercise long-arm jurisdiction under section 302(a)(1) over medical

providers that treat New York patients, but that have no offices in New York and conduct their

operations solely out-of-state.  *See e.g.*, *Paterno*, 23 N.E.3d at 995 ("The Appellate Division has

also declined to extend long-arm jurisdiction under CPLR 302(a)(1) to cover out-of-state medical

centers where the contacts were limited or the injury occurred outside New York."); *O'Brien v.*

*Hackensack Univ. Med. Ctr.*, 760 N.Y.S.2d 425, 428 (1st Dep't 2003) ("[T]he defendant in those

cases had no New York office, no New York mailing address, no New York bank accounts and

no employees working in New York, factors which, while not individually dispositive, in the

aggregate militated against finding that defendant had a sufficient New York presence so as to

justify jurisdiction."); *Hermann v. Sharon Hosp., Inc.*, 522 N.Y.S.2d 581, 583 (2d Dep't 1987)

(holding that there was no personal jurisdiction over a Connecticut hospital even though

"defendant hospital's physicians are licensed to practice in both New York and Connecticut and

. . . a sizeable portion of its patients reside in New York").

In light of the above, and because defendants have no ties to New York beyond alleged

participation in New York health insurance plans and treatment of New York patients out-of-

state, defendants do not "transact business" in New York for purposes of section 302(a)(1).

Accordingly, Yurasov-Lichtenberg fails to set forth a *prima facie* case of personal jurisdiction

pursuant to section 302(a)(1).

### III.     Personal Jurisdiction Pursuant to N.Y. C.P.L.R. § 302(a)(3)

The Court next looks to whether it possesses jurisdiction over defendants pursuant to

N.Y. C.P.L.R. § 302(a)(3).  Section 302(a)(3) states in pertinent part:

> A court may exercise personal jurisdiction over any non-domiciliary . . . who in person or
> through an agent:

---

jurisdiction over out-of-state medical providers in future cases.  We do not interpret the expanse of CPLR 302(a)(1)
to be boundless in application.").

. . .

commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i)  regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii)  expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

"Under this provision, the [plaintiff] must show both that an injury occurred 'within the state,' and that the elements of either clause (i) or (ii) have been satisfied." *Ingraham*, 687 N.E.2d at 1294 (citation omitted).  Yurasov-Lichtenberg contends that an injury occurred within the state and that defendants satisfy the requirements of subsection (ii).  (Decl. in Supp. Pl.'s Opp'n at 19.)

In determining whether an injury occurred within the state, the Court must apply the "situs-of-injury test." *DiStefano v. Carozzi N. Am., Inc*., 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999)). Under the "situs-of-injury test," the relevant location under section 302(a)(3) is the location of the "original event which caused the injury." *Id*. (quoting *Bank Brussels Lambert*, 171 F.3d at 791).  "This 'original event' is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." *Id*. (quoting *Bank Brussels Lambert*, 171 F.3d at 791).

Courts applying the situs-of-injury test in medical malpractice cases have held that the "original event" is the surgical procedure or the improper medical treatment about which plaintiff is suing, not the resulting damages. *See Paterno v. Laser Spine Inst.*, 973 N.Y.S.2d 681, 689 (2d Dep't 2013) ("*Paterno I*"), *aff'd,* 23 N.E.3d 988 (2014) ("[S]ince the situs of the initial

alleged injury in this case is Florida, where the surgical procedures took place, New York cannot

exercise personal jurisdiction over defendants pursuant to CPLR 302(a)(3), regardless of the fact

that the plaintiff suffered pain after his return to New York."); *Hermann*, 522 N.Y.S.2d at 583

("The situs of the injury is the location of the original event which caused the injury, not the

location where the resultant damages are subsequently felt by the plaintiff.").

Applying the "situs-of-injury test" to the facts of this case, the Court holds that

section 302(a)(3) does not confer jurisdiction over defendants.  Although Yurasov-Lichtenberg

may have incurred injuries in New York, such as the loss of earning power and psychological

damage (*see* Decl. in Supp. Pl.'s Opp'n at 10–11), the "original event" occurred in Florida.  It

was in Florida that Yurasov-Lichtenberg allegedly first noticed the unusual appearance of his left

leg after surgery and requested and was denied adequate medical treatment, resulting in a

pulmonary embolism.  (Compl. at 2–3.)  Therefore, because the situs of the injury is Florida, not

New York, the Court finds that it does not have personal jurisdiction over defendants under

section 302(a)(3).  *See Paterno I*, 973 N.Y.S.2d at 689 ("[S]ince the injury did not occur in New

York, it is not necessary to consider the additional criteria of CPLR 302(a)(3)(i) and (ii) . . . .").[5]

## IV.    Transfer Request

Finally, the Court considers Yurasov-Lichtenberg's transfer request.[6]  Whether to transfer

---

[5] Even if the "situs-of-injury" had been New York, this Court still would not possess jurisdiction over defendants pursuant to section 302(a)(3)(ii) – the prong on which Yurasov-Lichtenberg apparently relies.  (*See* Decl. in Supp. Pl.'s Opp'n at 18–19.)  New York courts have held that "[a] physician does not sell his or her services in interstate commerce by treating unsolicited patients that travel into the physician's home State seeking health care." *Ingraham*, 687 N.E.2d at 1296 ("[B]ecause respondent renders medical services wholly within his own State, he cannot be said to be engaging in interstate commerce."); *see also Rivera v. Atl. City Med. Ctr.*, No. 05-CV-6824 (GEL), 2006 WL 851717, at *2 (S.D.N.Y. Mar. 30, 2006) (finding a hospital's treatment of out-of-state patients failed to satisfy the interstate commerce requirement of section 302(a)(3)(ii)).  Instead, "a physician treating patients in his or her home State is providing a service that is inherently personal, and local, in nature." *Ingraham*, 687 N.E.2d at 1296.

[6] Plaintiff requests transfer pursuant to 28 U.S.C. § 1631.  (*See* Decl. in Supp. Pl.'s Opp'n at 19.)  However, "the legislative history of section 1631 provides some reason to believe that this section authorizes transfers only to cure

or to dismiss a case is within the discretion of the Court.  *See Minnette v. Time Warner*, 997 F.2d

1023, 1026 (2d Cir. 1993).  28 U.S.C. § 1404(a)[7] provides that "[f]or the convenience of parties

and witnesses, in the interest of justice, a district court may transfer any civil action to any other

district or division where it might have been brought."  A court may transfer a case "even where,

as here, the transferor court lacks personal jurisdiction over a defendant."  *Mangia Media Inc.*,

846 F. Supp. 2d at 324.  For the reasons below, the Court transfers this action to the U.S. District

Court of the Middle District of Florida.

The transfer power derived from section 1404 is "expressly limited by the final clause of

§ 1404(a) restricting transfer to those federal districts in which the action 'might have been

brought.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *see also Posven, C.A. v. Liberty*

*Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004).  28 U.S.C. § 1391(b)(2) states: "[a]

civil action may be brought in a judicial district in which a substantial part of the events or

---

lack of subject matter jurisdiction."  *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000).  A
court seeking to transfer to cure lack of personal jurisdiction instead should use the "transfer authority derived from
either section 1406(a) or section 1404(a)."  *Id.*  Although neither of the parties requested transfer pursuant to 28
U.S.C. § 1404, the Court, in its discretion, will consider transfer under section 1404 *sua sponte* given that Yurasov-
Lichtenberg is *pro se* and the Court lacks personal jurisdiction over the matter.  *See Pisani v. Diener*, No. 07-CV-
5118 (JFB), 2009 WL 749893, at *8 (E.D.N.Y. Mar. 17, 2009) ("[A]lthough the Court recognizes that none of the
parties requested transfer (in the alternative) in connection with the motions to dismiss, the Court properly considers
the issue, in its discretion, *sua sponte* given the absence of venue or personal jurisdiction in this District.");
*Interested London Underwriters v. Kelly Global Logistics, Inc.*, No. 06-CV-5845 (PKL), 2008 WL 558038, at *5
(S.D.N.Y. Feb. 29, 2008) (quoting *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, No. 05-CV-6893 (MBM),
2006 WL 1147963, at *9 (S.D.N.Y. May 1, 2006)) ("[A] court may transfer a case pursuant to 28 U.S.C. § 1406(a)
*sua sponte* even if the defendant moves only to dismiss.").

[7] Courts have the power to transfer a case if there is no personal jurisdiction over defendants, whether or not venue
is proper.  *Matra Et Manurhin v. Int'l Armament Co.*, 628 F. Supp. 1532, 1534  n.2 (S.D.N.Y. 1986).  The Court
may transfer pursuant to 28 U.S.C. § 1404(a) where venue is proper, and pursuant to 28 U.S.C. § 1406(a) where it is
not.  *Id.*  The end result of transfer under section 1404 and section 1406 is the same.  15 Charles Alan Wright, Arthur
R. Miller & Edward H Cooper, *Federal Practice and Procedure* § 3827, at 265–66 (2d ed. 1986) ("The end result is
the same, and very few litigants will care whether the court purports to proceed under Section 1404(a) or Section
1406(a) in transferring to a district where personal jurisdiction can be exercised over the defendant.").  Here
defendants have not challenged venue.  Accordingly, for purposes of this motion, the Court will assume venue is
proper and proceed under section 1404(a).  *See Matra Et. Manruhin*, 628 F. Supp. at 1534 n.2 ("Although
defendants have moved to dismiss for lack of personal jurisdiction and for improper venue, it is clear that the Court
has power to transfer the case even if there is no personal jurisdiction over the defendants and whether or not venue
is proper in this district . . . . For the purposes of this motion to transfer therefore, the Court will assume venue is
proper in this district and proceed under § 1404(a).").

omissions giving rise to the claim occurred[.]"  It is clear that a "substantial part of the events"

that gave rise to Yurasov-Lichtenberg's claim occurred in Collier County, Florida, located in the

Middle District of Florida. (*See* Compl.)  *See* 28 U.S.C. § 89(b).  Therefore, this action "might

have been brought" in the Middle District of Florida.

Section 1404 also requires that the Court determine "if the transfer is warranted by the

convenience of parties and witnesses and promotes the interest of justice."  *Van Dusen*, 376 U.S.

at 616.  The Court finds that the convenience of parties and witnesses weighs heavily in favor of

transfer.  Most importantly, "the events that are the subject of this litigation" all occurred in

Florida, "which is where it appears all of the relevant evidence and witnesses," except Yurasov-

Lichtenberg, are located and where all defendants currently reside.  *Sanders v. Delta Air Lines,*

*Inc.*, No. 13-CV-2800 (PKC), 2013 WL 5755248, at *2 (E.D.N.Y. Oct. 23, 2013).

The Court also finds that transfer to the Middle District of Florida would promote the

"interest of justice."  28 U.S.C. § 1404(a).  The Second Circuit has held that "[a] 'compelling

reason' for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be

time-barred on refiling in the proper forum."  *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d

408, 435 (2d Cir. 2005) (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)).  The

statute of limitations in Florida for medical malpractice claims is two years after the event

"giving rise to the action occurred."  Fla. Stat. § 95.11(4)(b).  The doctors released Yurasov-

Lichtenberg allegedly without adequate medical treatment on March 18, 2013 and Yurasov-

Lichtenberg suffered the pulmonary embolism on March 26, 2013.  (Compl. at 2–3.)  Yurasov-

Lichtenberg commenced this action on March 18, 2015.  (Compl. at 1.)  If this Court dismissed

Yurasov-Lichtenberg's complaint, he would be time barred from initiating a new action in the

Middle District of Florida.  Therefore, because the statute of limitations has run in the present

case, the Court finds that the interest of justice weighs heavily in favor of transfer.

Thus, the Court finds that transfer of the case to the U.S. District Court for the Middle

District of Florida pursuant to 28 U.S.C. § 1404(a) is warranted.

**CONCLUSION**

For the reasons set forth above, defendants' motions to dismiss for lack of personal

jurisdiction are granted, and Yurasov-Lichtenberg's request to transfer this action to the Middle

District of Florida is granted.  The Clerk of Court is directed to  transfer this action, and close the

file in this Court.

The Clerk of Court further is directed to send to Yurasov-Lichtenberg a copy of this

Memorandum and Order and note the mailing on the docket.

<br>

SO ORDERED.

Dated: Brooklyn, New York                    *Roslynn R. Mauskopf*
   August 30, 2016


             _____
             ROSLYNN R. MAUSKOPF
             United States District Judge